**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2004 APR 13 A 11: 17

U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| BRENDA KAY HILTZMAN | : | CIVIL ACTION NO. |
| PLAINTIFF | : | 301CV2348AWT |
| vs. | : | AMENDED COMPLAINT |
| GENE ROSENBERG ASSOCIATES, | : | |
| DEFENDANT | : | APRIL 8, 2004 |

Plaintiff, Brenda Kay Hiltzman, sues defendant Gene Rosenberg Associates, a partnership, and alleges:

1. At all times mentioned in this Complaint, defendant, Gene Rosenberg Associates (GRA), was and is a partnership organized and existing under the laws of Connecticut, with its principal place of business at 75 Kitts Lane, Newington, CT 06111. GRA engages in the business of consulting and assisting furniture retail establishments in conducting sale promotions, including going out of business, liquidation, and other sales.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f)(3).

3. Venue is proper in this district pursuant to 42 U.S.C. §2000e-5(f)(3), because this is the judicial district in which the employment records relevant to the practices complained of are maintained, and because this is the judicial district in which the defendant has its principal office.

4. At all times mentioned in this complaint, plaintiff was a resident of Palm Beach

County, Florida, and was employed by defendant as a sales associate at a liquidation sale conducted by GRA that commenced on or about November 1, 1999 and ended on or about March 31, 2000 in Mentor, Ohio.

5. Plaintiff is a member of a protected class in that she is a woman.

6. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, the Connecticut Fair Employment Practices Act, and the corresponding regulations of the federal Equal Employment Opportunity Commission, and the Connecticut Commission for Human Rights and Opportunities.

7. At all times mentioned in this Complaint, defendant GRA regularly employed thirty (30) or more persons, bringing defendant GRA within the provisions of Title VII.

8. On September 27, 2000 plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and the Connecticut Commission for Human Rights and Opportunities. A true and correct copy of the charge was attached to the original complaint as Exhibit A and is incorporated by reference.

9. On September 20, 2001, plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission. A true and correct copy of the notice was attached to the original complaint as Exhibit B, and is incorporated by reference.

10. At all times mentioned in this Complaint, Paul Roy ("Roy") was employed by defendant GRA as a sales manager and was plaintiff's immediate supervisor. Roy had the authority to act for GRA in the hiring, firing and supervision of GRA employees at the Mentor, Ohio location, including plaintiff.He was granted virtually unchecked authority over plaintiff and

directly controlled and supervised all aspects of her day-to-day activities. Roy was a 29-year employee of GENE ROSENBERG ASSOCIATES.

11.     During plaintiff's employment as Roy's subordinate, Roy engaged in quid pro quo sexual harassment, and plaintiff was subjected to a hostile work environment.

12.     Roy was the senior GENE ROSENBERG ASSOCIATES executive at a liquidation event run by GENE ROSENBERG ASSOCIATES at Empire Interiors, Inc. d/b/a Casa LaSalle and Empire Furniture of Mentor, LLC, at 7530 Mentor Avenue, Mentor Ohio (the "Ohio Sale").

13.     Plaintiff was in turn hired as a salesperson for the Ohio Sale. Roy told plaintiff that he was "the manager" and that "everything gets done my way" at the Ohio Sale.

14.     When negotiating a sales price with a potential customer, plaintiff was obligated to obtain a price quote from Roy, or from his subordinate, floor manager Tony Defonzo.

15.     On or about January 7, 2000, Roy began a pattern of unwanted sexual touching and harassment when plaintiff attempted to obtain such price quotes.

16.     On that date, plaintiff went to Roy for a price quote. Roy put his arm around plaintiff's waist, felt down to her buttocks, and then began stroking her hand. Plaintiff pulled away and told Roy that she was working to make money, and nothing else.

17.     Several days later, Roy repeated the unwanted sexual touching. Plaintiff again told Roy to leave her alone, and to give her the necessary prices without touching her.

18.     Nevertheless, Roy's pattern of unwanted sexual touching persisted over the next several weeks, as he repeatedly engaged in unwanted sexual touching of plaintiff on the sales floor.

19.     As the incidents of unwanted sexual touching continued through the week of January 17th, plaintiff begged Roy to stop.

20.     Instead of ceasing the unwanted sexual touching, Roy grew angry with plaintiff's

rebuffs, and retaliated by verbally abusing plaintiff. Although plaintiff had never previously had trouble with her sales slips, Roy began finding faults with every sales slip.

21. During the first week of February, Roy approached plaintiff on the sales floor. Plaintiff sought to avoid Roy by walking away from him, but Roy caught her, grabbed her around the waist, and pressed her to him forcefully and kissed her on the mouth. Plaintiff pulled away and ran away, shocked and scared. Plaintiff resolved to avoid Roy, so she could keep her job, which she needed, without suffering further abuse.

22. To avoid Roy, plaintiff sought prices quotes from Roy's subordinate, Tony Defonzo, which was a normal practice at the sale. Roy responded by ordering plaintiff to obtain all of her price quotes from himself, though all other salespersons could still obtain them from Defonzo.

23. Roy told plaintiff on several occasions that plaintiff could make some "real money" during the Ohio Sale if she would have sex with Roy.

24. Plaintiff reported Roy's abuses to Defonzo, and told Defonzo that Roy had ordered her to go to Roy only for pricing.

25. Defonzo related that Roy had told him that he was going to give plaintiff less advantageous pricing from everyone else.

26. Defonzo then told plaintiff to stay away from Roy as much as possible, that Defonzo would still give her fair prices, and that if she had to get a price from Roy, she should only approach him in the office where there were two female clerks.

27. Nevertheless, the harassment continued into February. Roy continually sought plaintiff out on the selling floor, complained about everything she did. Roy's constant watching and interference disrupted plaintiff's ability to focus on her customers.

28. Roy ordered that he would have to sign off on all of plaintiff's orders, and would

stare at her breasts when she came to him, as ordered.

29.     Roy then began making lewd comments to plaintiff, and she again asked him to leave her alone.

30.     Roy told plaintiff that the company officer who handled sexual harassment claims, a Mrs. Cohen, was his biggest ally at the company.

31.     In another sexual attack, Roy cornered plaintiff alone in the leather gallery at the store, grabbed her, and kissed her on the mouth. Plaintiff pulled away, and told Roy that she had informed Mr. Defonzo of Roy's repeated inappropriate and harassing behavior. Roy retorted that he had been with the company for 29 years, and that he didn't care what anyone knew. Roy then said that he liked plaintiff's body, and walked away laughing.

32.     Later that day, Roy began making obscene gestures at plaintiff.

33.     By the third week of February, Roy's anger at plaintiff's refusal to submit to his unwanted, unwelcome and inappropriate sexual demands escalated and Roy ridiculed and berated plaintiff in front of her customers, threatening her ability to make sales.

34.     On February 26, 2000, Roy began yelling at plaintiff in front of a customer regarding an unrelated prior sale. Plaintiff did not respond, and attempted to close a pending sale. Roy's face reddened.

35.     As plaintiff attempted to serve her customer, Roy yelled for plaintiff to "get back here now" to where he was standing. He berated her for not getting a signature on the delivery line of a prior ticket (which is normally only signed to acknowledge delivery). Plaintiff turned to get the signature, when Roy yelled at her again, screaming, "get back here now!" Plaintiff turned, and said, "what?" Roy told plaintiff to get her things and to get out of the store, even though he knew that plaintiff had no transportation to her apartment 15 miles away.

36. As she left, plaintiff heard Roy yelling to Defonzo to fire "that [expletive deleted] [expletive deleted]. I want her out of here now."

37. Defonzo caught up with plaintiff in the parking lot, and told her to wait while he straightened out the situation. Instead, Defonzo himself was fired for refusing to fire plaintiff.

38. Since being wrongfully fired, plaintiff has not been paid for all of her sales made prior to the firing, despite contacting defendant's offices directly.

39. The above events constituted unlawful sexual harassment and battery and rendered plaintiff's employment environment hostile.

40. Plaintiff alleges that the conduct described in this complaint would have been offensive to any woman. Plaintiff did not consent to such conduct, and found it unwelcome and offensive. Roy's conduct rendered plaintiff's employment intolerable, and her subsequent firing was undertaken by Roy in retaliation for her repeated refusals to submit to Roy's sexual demands.

41. Plaintiff complained to Roy about harassment of plaintiff and asked him to cease. He refused. Plaintiff also complained of the harassment to Defonzo, the floor manager of the Ohio Sale. However, when Defonzo attempted to intervene on plaintiff's behalf, he was himself fired.

42. The conduct described in this complaint was malicious and was intended to oppress, humiliate, and denigrate plaintiff and was totally without justification. The conduct of defendant in insulting, battering, embarrassing, and sexually harassing plaintiff, was done under color of law, taken in the course and scope of carrying out official duties and was made while Roy was on duty, was only possible due to defendant employee's official status as plaintiff's superior, was related to his performance of his official duties and was done in his capacity as a member of defendant employer's personnel, and interfered with plaintiff's ability to perform her duties.

43. Plaintiff further alleges that defendant GENE ROSENBERG ASSOCIATES was

aware or should have been aware of such conduct by Roy, because plaintiff complained of his conduct to managerial employees and agents of defendant GENE ROSENBERG ASSOCIATES, as alleged above. However, no action reasonably designed to remedy the situation was taken on the complaints and the harassment continued.

44.     Plaintiff alleges that by its failure to prevent or correct the discrimination and sexual harassment of plaintiff by its agent and employee, as alleged above, defendant GENE ROSENBERG ASSOCIATES acted to condone and ratify such conduct with the knowledge that such ratification would thus interfere with plaintiff's employment and ability to continue her career.

45.     As a result of defendant's unlawful conduct as alleged in this complaint, plaintiff has lost substantial employment benefits with defendant GENE ROSENBERG ASSOCIATES, including lost wages, bonuses, and other losses, in an amount in excess of $100,000.00, the precise amount of which will be proven at the time of trial.

46.     As a further direct and proximate result of defendant's' unlawful conduct, plaintiff has suffered extreme and severe anguish, humiliation, emotional distress, nervousness, tension, anxiety, and depression, the extent of which is not fully known at this time and the amount of damages caused thus is not yet fully ascertained but is in an amount in excess of $100,000.00, the precise amount to be proven at the time of trial. Plaintiff claims that amount together with prejudgment interest.

47.     The conduct of defendant as described in this complaint was oppressive, fraudulent, and malicious, thus entitling plaintiff to an award of punitive damages in an amount appropriate to punish and make an example of defendant.

THE PLAINTIFF

By /s/ Noel R. Newman
NOEL R. NEWMAN
Friedman, Newman, Levy, Sheehan
 & Carolan, P.C.
One Eliot Place
Fairfield, CT 06430
(203) 259-5300
(203) 259-2996 – Fax
Ct. #42750

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this 8th day of April, 2004 to all counsel of record; to wit: Thomas A. Kenefick, III, Esq., 73 Chestnut Street, Springfield, MA 01103.

/s/ Noel R. Newman
NOEL R. NEWMAN

**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT   2004 APR 13 A 11: 17

U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| BRENDA KAY HILTZMAN | : | CIVIL ACTION NO. |
| PLAINTIFF | : | 301CV2348AWT |
| vs. | : | NOTICE OF MANUAL FILING |
| GENE ROSENBERG ASSOCIATES, | : | |
| DEFENDANT | : | APRIL 8, 2004 |

The plaintiff, Brenda Kay Hiltzman, hereby gives Notice of the manual filing of the Amended Complaint dated April 8, 2004.

This document has not been filed in PDF format as counsel is in the process of obtaining the necessary software in order to properly format pleadings to PDF. Counsel will file subsequent documents in the PDF format consistent with the Court's rule.

This document has been manually served on all parties.

THE PLAINTIFF

By _____
NOEL R. NEWMAN
Friedman, Newman, Levy, Sheehan
  & Carolan, P.C.
One Eliot Place
Fairfield, CT 06430
(203) 259-5300
(203) 259-2996 – Fax
Ct. #42750

## CERTIFICATION

    This is to certify that a copy of the foregoing was mailed this 8th day of April, 2004 to all counsel of record; to wit: Thomas A. Kenefick, III, Esq., 73 Chestnut Street, Springfield, MA 01103.

                                                                 NOEL R. NEWMAN